# 22-1661

## In the United States Court of Appeals
### for the Second Circuit

---

T.W.,

*Plaintiff-Appellant,*

v.

New York State Board of Law Examiners, Diane Bosse, John J. McAlary,
Bryan Williams, Robert McMillen, E. Leo Milonas, Michael Colodner,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

---

Mary C. Vargas
Michael Steven Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (240) 793-3185

Jo Anne Simon
JO ANNE SIMON, P.C.
99 Park Avenue, Suite 1510
New York, NY 10016
Tel: (718) 852-3528

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

I.   PRELIMINARY STATEMENT ....................................................1

II.  LEGAL ARGUMENT..................................................................2

    A.   In *T.W. I*, this Court Did Not Analyze and Did Not Need To
       Analyze Whether BOLE Is an Arm of the State ...................................2

    B.   BOLE Has Not Met Its Burden of Establishing Entitlement to
       Immunity ................................................................................6

        1.   Judgment Against BOLE Is Not Judgment Against the State
           Treasury ................................................................7

        2.   BOLE Is an Independent Agency ..............................................8

    C.   Title II Validly Abrogates Sovereign Immunity in this Educational
       Testing Case ........................................................................12

        1.   This Case Concerns the Accessibility of Education and
           Educational Testing................................................14

        2.   There Is an Undisputed History of Pervasive Discrimination
           in Education and Educational Testing .....................................18

        3.   Title II Is a Congruent and Proportional Response to the
           History of Pervasive Discrimination in Education and
           Educational Testing................................................23

    D.   *Ex parte Young* Provides for Declaratory and Injunctive Relief To
       Remedy Ongoing Discrimination .....................................................25

III. CONCLUSION...........................................................................26

CERTIFICATE OF COMPLIANCE......................................................28

CERTIFICATE OF SERVICE ...........................................................29

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Cooper*,
    140 S. Ct. 994 (2020)............................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................25

*Ass'n of Disabled Ams. v. Fla. Int'l Univ.*,
    405 F.3d 954 (11th Cir. 2005) ............................................15

*Bartlett v. N.Y. State Bd. of Law Exam'rs*,
    156 F.3d 321 (2d Cir. 1998) .............................................5, 20

*Bartlett v. N.Y. State Bd. of Law Exam'rs*,
    226 F.3d 69 (2d Cir. 2000) ...............................................5, 20

*Bartlett v. N.Y. State Bd. of Law Exam'rs*,
    No. 93 Civ. 4986 (SS), 2001 U.S. Dist. LEXIS 11926
    (S.D.N.Y. Aug. 15, 2001).....................................................24

*Block v. Tex. Bd. of Law Exam'rs*,
    952 F.3d 613 (5th Cir. 2020) .............................................14

*Bd. of Trustees of the Univ. of Alabama v. Garrett*,
    531 U.S. 356 (2001)....................................................... 21, 22

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ......................................... 16, 18

*Crowe v. Oregon State Bar*,
    989 F.3d 714 (9th Cir. 2021) .............................................10

*Edelman v. Jordan*,
    415 U.S. 651 (1974)............................................................12

*Ex parte Young*,
  209 U.S. 123 (1908) .................................................................. 2, 25, 26

*Fabrikant v. French*,
  691 F.3d 193 (2d Cir. 2012) ...................................................12

*Flint v. Dennison*,
  488 F.3d 816 (9th Cir. 2007) ..................................................26

*Guttman v. Khalsa*,
  669 F.3d 1101 (10th Cir. 2012) ..............................................17

*Hess v. Port Auth. Trans-Hudson Corp.*,
  513 U.S. 30 (1994) ...............................................................7, 8

*Hoover v. Ronwin*,
  466 U.S. 558 (1984) ...............................................................12

*Hu v. City of New York*,
  927 F.3d 81 (2d Cir. 2019) ....................................................17

*In re Brennan*,
  243 N.Y.S. 705 (N.Y. App. Div. 1930) ................................ 10, 14, 15

*Jim C. v. United States*,
  235 F.3d 1079 (8th Cir. 2000) (en banc) ................................3

*Krutell v. N.Y. State Bd. of Law Exam'rs*,
  799 N.Y.S.2d 680 (N.Y. App. Div. 2005) .............................14

*Leitner v. Westchester Cmty. Coll.*,
  779 F.3d 130 (2d Cir. 2015) ...............................................7, 12

*Loeb v. New York State Bd. of Law Exam'rs*,
  534 N.Y.S.2d 559 (N.Y. App. Div. 1988) .............................11

*Mancuso v. New York State Thruway Auth.*,
  86 F.3d 289 (2d Cir. 1998) ................................................ 1, 5, 6, 9

*Nat'l Ass'n of the Deaf v. State of Fla.*,
   980 F.3d 763 (11th Cir. 2020) ........................................................ 15, 24

*Nev. Dep't of Human Res. v. Hibbs*,
   538 U.S. 721 (2003) ............................................... 19, 20, 21, 22

*Regents of the Univ. of Cal. v. Doe*,
   519 U.S. 425 (1997) ...............................................................8

*Renner v. Supreme Ct. of Fla.*,
   No. 19-14981, 2022 U.S. App. LEXIS 14211 (11th Cir. May 25, 2022) ............16

*Santiago v. N.Y. State Dep't of Corr. Servs.*,
   945 F.2d 25 (2d Cir. 1991) ....................................................4

*Schware v. Bd. of Bar Exam'rs*,
   353 U.S. 232 (1957).............................................................24

*Sharkey v. Thurston*,
   268 N.Y. 123 (N.Y. 1935) ......................................................9

*Sherman v. N.Y. State Thruway Auth.*,
   27 N.Y.3d 1019 (N.Y. 2016) ...................................................10

*Sodha v. New York State Bd. of Law Exam'rs*,
   431 N.Y.S.2d 885 (N.Y. Sup. Ct. 1980)............................................11

*Supreme Court of Va. v. Friedman*,
   487 U.S. 59 (1988)............................................... 17, 18, 24

*T.W. v. New York State Bd. of Law Exam'rs*,
   996 F.3d 87 (2d Cir. 2021) ................................................ 1, 2, 3, 4, 5

*Tennessee v. Lane*,
   541 U.S. 509 (2004)....................................... 18, 19, 20, 21, 22, 23, 24

*Thompson v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
   No. 22-cv-6307-FPG, 2022 U.S. Dist. LEXIS 177723
   (W.D.N.Y. Sept. 29, 2022) ..................................................3, 4

*United States v. Farhane*,
   634 F.3d 127 (2d Cir. 2011) ...............................................................17

*United States v. Georgia*,
   546 U.S. 151 (2006)...........................................................................23

*United States v. Novak*,
   903 F.2d 883 (2d Cir. 1990) ..............................................................18

*U.S. Dep't of Transp. v. Paralyzed Veterans of America*,
   477 U.S. 597 (1986)..............................................................................3

*Vega v. Semple*,
   963 F.3d 259 (2d Cir. 2020) ..............................................................25

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*,
   466 F.3d 232 (2d Cir. 2006) .............................................................6, 9

*Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
   831 F.3d 64 (2d Cir. 2016) ...................................................................3

## Statutes

29 U.S.C. § 794 ......................................................................................1

29 U.S.C. § 794(a) .................................................................................3

29 U.S.C. § 794(b) .................................................................................4

## Regulations

28 C.F.R. § 35.130(b)(7)........................................................................24

28 C.F.R. § 35.130(b)(7)(i) ...................................................................12

22 N.Y.C.R.R. § 520.15 .......................................................................8, 10

**Rules**

N.Y. R. Prof. Conduct 8.4(c) ..................................................................26

Wis. S. Ct. R. 40.03...............................................................................18

**Other Authorities**

154 Cong. Rec. H8286 (daily ed. Sept. 17, 2008) ..................................20

ADA Amendments Act of 2008, H.R. Rep. 110-730(I), 110th Cong., 2d Sess. 15
(2008)...................................................................................................20

*Americans with Disabilities Act of 1989: Hearings on H.R. 2273 Before the H.
Subcomm. on Civil & Constitutional Rights of the House Comm. on the
Judiciary*, 101st Cong., 1st Sess. (1989) (statement of Laura D. Cooper).............19

H.R. Rep. 101-485(III) (1990), *reprinted in* A&P H.R. Rep. 101-485 ..................22

## I.     PRELIMINARY STATEMENT

BOLE mischaracterizes this Court's holding in *T.W. v. New York State Bd. Of Law Exam'rs*, 996 F.3d 87 (2d Cir. 2021) ("*T.W. I*").  Then, this Court addressed only the issue of whether BOLE is a recipient of federal financial assistance subject to section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Since whether an entity is a recipient of federal financial assistance is an inquiry distinct from whether that entity is an arm of the state, no party had reason at that time to brief or argue whether BOLE was an arm of the state.  On remand, the District Court ruled on the merits of the arm-of-the-state issue, and the issue is now ripe for resolution on appeal.

BOLE, however, does not engage in the fact-intensive inquiry that this Court's precedents demand when undertaking arm-of-the-state analysis.  BOLE, which has the burden of establishing that it is entitled to immunity, does not independently analyze the factors set forth in *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1998), and for the reasons outlined in T.W.'s opening brief, would not have been able to meet its burden given the well-established factual record in this case.

BOLE also mischaracterizes this case as concerning professional licensing.  BOLE is not a licensing board and does not issue licenses.  BOLE, which was established as an educational board, has performed its educational role over the

1

years as its decisions regarding the bar examination have influenced law school curricula and shaped the education of generations of prospective lawyers. Given the history of pervasive discrimination in education and educational testing, including in the administration of the bar examination, Congress had ample basis for enacting legislation requiring public testing entities to provide reasonable modifications to ensure a level playing field for individuals with disabilities to demonstrate their education.

Finally, BOLE ignores the ongoing harm that T.W. suffers from its refusal to disavow and expunge the bar examination failures obtained under discriminatory conditions. As T.W. alleged in her Complaint, she is unable to seek employment with top law firms because such firms will not hire individuals who have twice failed the bar examination. *Ex parte Young* provides for declaratory and injunctive relief to remedy such ongoing harm.

## II. LEGAL ARGUMENT

### A. In *T.W. I*, this Court Did Not Analyze and Did Not Need To Analyze Whether BOLE Is an Arm of the State

BOLE misstates this Court's holding in the prior appeal. Then, the Court was confronted with the issue of whether BOLE is a recipient of federal financial assistance subject to section 504 of the Rehabilitation Act. Whether an entity is an arm of the state has no bearing on the section 504 analysis, which turns instead on

2

whether the entity in question has received federal financial assistance.

29 U.S.C. § 794(a).

When courts note sovereign immunity in the context of section 504 claims, it is to observe that entities with sovereign immunity waive such immunity in accepting federal financial assistance. *See, e.g.*, *Jim C. v. United States*, 235 F.3d 1079, 1081-82 (8th Cir. 2000) (en banc). Whether an entity receives federal financial assistance and therefore waives sovereign immunity boils down to the factual issue whether the entity receives federal financial assistance, and the analysis proceeds in the same manner as if the entity were a private entity. *Cf., e.g.*, *U.S. Dep't of Transp. V. Paralyzed Veterans of America*, 477 U.S. 597 (1986) (analyzing whether commercial airlines were recipients of federal financial assistance).[1] Since the focus is on whether the entity receives federal financial assistance, it is irrelevant for section 504 purposes whether an entity is an arm of the state.[2]

---

[1] Sovereign immunity is relevant to the construction of section 504 only to preclude coverage of the state as a whole or branches of state government absent more explicit statutory language. *T.W. I*, 996 F.3d at 97-99.

[2] For instance, the New York Department of Corrections and Community Supervision (DCCS) is an arm of the state subject to section 504 as a recipient of federal financial assistance. *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016) (section 504 applies to DCCS as a recipient of federal financial assistance); *Thompson v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 22-cv-6307-FPG, 2022 U.S. Dist. LEXIS 177723, at *9 &

In *T.W. I*, the issue was whether the federal financial assistance that other governmental entities receive could be imputed to BOLE. Section 504 applies to "all of the operations of" a "department, agency, special purpose district, or other instrumentality of a State or local government" that receives federal financial assistance. 29 U.S.C. § 794(b). This Court held that the federal financial assistance that the Unified Court System ("UCS") receives could not be imputed to BOLE because UCS, as a branch of government, is not subject to section 504. 996 F.3d at 101. Since within the judicial branch, only the courts of original jurisdiction received federal financial assistance during the relevant time period, and BOLE is not a court of original jurisdiction, this Court held that BOLE is not a recipient of federal financial assistance. This Court then stated that it was not necessary to go any further in analyzing BOLE's relationship to other entities within the judicial branch. 996 F.3d at 101. The Court speculated that BOLE might be an "operation" of the Court of Appeals for section 504 purposes, but declined to decide that issue. *Id*. Thus, the only holdings that this Court made with respect to BOLE are that BOLE is not a court of original jurisdiction and not a recipient of federal financial assistance. BOLE's suggestion that this

---

n.1 (W.D.N.Y. Sept. 29, 2022) (DCCS is an arm of the state) (citing *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991)).

straightforward reading of *T.W. I* would render it an advisory opinion is absurd because this Court decided the section 504 claim.[3]

Since whether an entity is an arm of the state has no bearing on whether it is a recipient of federal financial assistance, no party had any reason in the first appeal to brief or argue whether BOLE is an arm of the state. This Court therefore had no need to engage in the fact-intensive inquiry set forth in *Mancuso v. New York Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996), and its statements in passing that BOLE is an arm of the state constituted *dicta* that did not affect the resolution of the section 504 claim.

On remand, the resolution of the arm of the state issue was a necessary predicate to resolving the Title II sovereign immunity issue, since if an entity is not an arm of the state, there is no immunity for Title II to abrogate. The District Court therefore ruled in the first instance on the fact-intensive issue whether BOLE is an arm of the state, applying the *Mancuso* factors, and this issue is now ripe for appellate review.

---

[3] Further demonstrating the irrelevance to the section 504 issue whether BOLE is an arm of the state, this Court had earlier held that BOLE was subject to section 504 as a recipient of federal financial assistance that it received at the time in *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 156 F.3d 321, 330-331 (2d Cir. 1998) (noting that "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the *recipient's agreement* to accept the federal funds") (emphasis in original), *vacated on other grounds as noted in Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 74, 78 (2d Cir. 2000).

This is a case of considerable public importance that has attracted a number of *amici*. BOLE, as the party asserting immunity, bears the burden of proof in establishing that it is an arm of the state and may not satisfy that burden by pointing to dicta and thereby evading its responsibility to follow this Court's well-established precedent setting forth the legal standard for determining whether an entity is an arm of the state. *See, e.g.*, *Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2006) (party asserting sovereign immunity bears burden of establishing entitlement to such immunity).

## B. BOLE Has Not Met Its Burden of Establishing Entitlement to Immunity

As this Court's precedents make clear, whether an entity is an arm of the state is a fact-intensive inquiry. *See, e.g.*, *Mancuso*, 86 F.3d 289. Whether an entity is an arm of the state requires consideration of multiple factors, each of which were briefed in detail in T.W.'s opening brief. In response, BOLE asserts that reliance on *Mancuso* was "misplaced". BOLE Br. At 18. Regardless of what BOLE thinks of this Court's precedent, *Mancuso* is the law of this Circuit and must be applied in determining whether an entity is an arm of the state. BOLE has not undertaken the factor-by-factor analysis as this Court's precedents require even though it is the party that bears the burden of proof whether it is an arm of the state.

Further, BOLE does not contest that BOLE is not funded by the state treasury and that judgment against BOLE will not affect the state treasury. BOLE also concedes that the Court of Appeals delegated authority to BOLE and does not supervise or direct its operations. These concessions confirm that BOLE is not an arm of the state.

### 1. Judgment Against BOLE Is Not Judgment Against the State Treasury

As described in T.W.'s opening brief, the Attorney Licensing Fund is not part of the state treasury but rather a segregated fund established to ensure that the private bar covers, *inter alia*, the cost of administering the bar examination. The District Court's erroneous characterization of this fund as part of the state treasury was core to its holding that BOLE is an arm of the state. JA40, 42. BOLE does not attempt to defend the District Court's erroneous holding in this regard.

BOLE mistakenly downplays the critical importance of the fact that the Attorney Licensing Fund is not part of the state treasury, incorrectly asserting that the impact on the state treasury is not a significant factor in the arm-of-the-state analysis. BOLE Br. At 20. The United States Supreme Court has held that whether judgment against an entity will impact the state treasury is "*the most salient factor*" in determining whether an entity is an arm of the state. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) (emphasis added); *see also, e.g.*, *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (quoting

7

*Hess*, 513 U.S. at 48).[4]  Since judgment against BOLE will not affect the state

treasury, this factor weights the scales strongly against a finding of immunity.[5]

## 2. BOLE Is an Independent Agency

BOLE's admissions, the factual record, and case law all demonstrate that

BOLE is an independent agency not subject to significant oversight.

BOLE acknowledges that the Court of Appeals has endowed it with the

independence to conduct its own operations, including the regulatory authority to

set its own rules and procedures.  BOLE Br. At 4 (citing 22 N.Y.C.R.R. § 520.15).

BOLE also acknowledges that it manages its own affairs without supervision or

---

[4] BOLE mistakenly relies on *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997).  That case, however, dealt with whether an entity was entitled to immunity even though it stood to be indemnified by a third party.  The Supreme Court held that it was judgment against the state treasury that mattered—not whether the entity has an insurance policy or indemnification provision that minimizes any actual impact to the treasury.  *Id.* at 430-31.  In this case, judgment against BOLE is not judgment against the state treasury.

[5] BOLE incorrectly asserts that judgment against BOLE might result in an increase in attorney registration fees.  BOLE Br. at 19-20.  There is no evidence in the record to support such speculation.  On the contrary, BOLE does not dispute that it ran budget surpluses of hundreds of thousands of dollars during the relevant time period in this case.  JA104 ($621,068 below budget in 2012-13); JA121 ($762,150 below budget in 2013-14); JA139 ($395,333 under budget in 2014-15).  Moreover, such assertion that fees might increase is irrelevant; such a scenario is no different than the possibility that the New York State Thruway Authority—not an arm of the state—might have to increase tolls to cover its budget.

direction from the Court of Appeals. BOLE Br. At 4. Further, BOLE

acknowledges that its funding is distinct from that of the Court of Appeals. BOLE

Br. At 12.

BOLE incorrectly contends that the Court of Appeals has the power to

remove BOLE board members. BOLE points to no such statutory authority.

BOLE's only cited legal authority is a 1935 case concerning a mayor's attempt to

remove a police commissioner in violation of the removal procedures set forth by a

city's charter. *Sharkey v. Thurston*, 268 N.Y. 123, 127 (N.Y. 1935). In that case,

the Court of Appeals held that when a statute provides for removal, the procedures

set forth for removal must be followed. *Id.* Unlike in that case, however, there is

no statute that provides for removal of BOLE board members, much less any

statutory provision that establishes a specific procedure for their removal. In

*Mancuso*, this Court held that the absence of such removal provision counseled

against immunity, and it does so here. 86 F.3d at 295. The lack of removal means

that BOLE board members—who regularly serve for decades—act with

independence in carrying out their functions.

BOLE also relies on statutory provisions that make BOLE nominally subject

to oversight by the Court of Appeals. Such nominal statutory oversight, however,

does not convert an otherwise independent agency into an arm of the state. *See*

*Woods*, 466 F.3d at 249 (holding that even when the state has "considerable

9

supervisory authority," this does not counsel immunity when the state does not have veto power over the day-to-day decisions of the entity in question).  Further, as *Crowe v. Oregon State Bar*, 989 F.3d 714 (9th Cir. 2021), demonstrates, mere oversight of a bar examiner by the state supreme court is not enough to confer immunity on the bar examiner.  *Id.* at 732 (noting that the Oregon State Bar is "subject to the review and direction of the Oregon Supreme Court" in managing bar examinations).  Moreover, BOLE concedes that the Court of Appeals promulgated a regulation permitting BOLE to set forth its own policies and procedures, 22 N.Y.C.R.R. § 520.15, and further that the Court of Appeals exercises no oversight over BOLE's day-to-day operations.  BOLE Br. At 18. BOLE's independence in carrying out its functions point against immunity.[6]

BOLE also claims that it is subject to state judicial review.  The mere fact that an entity is subject to suit in state courts does not convert it into an arm of the state.  The New York State Thruway Authority, for instance, has been sued repeatedly in state court, and has not gained immunity as a result.  *See, e.g.*, *Sherman v. N.Y. State Thruway Auth.*, 27 N.Y.3d 1019 (N.Y. 2016) (state supreme

---

[6] BOLE improperly compares itself to character and fitness committees and attorney grievance committees that determine whether an individual possesses the necessary character to obtain or maintain a law license.  BOLE Br. at 17.  New York courts have held that such committees may not encroach on BOLE's role in measuring the "legal learning" of prospective attorneys.  *In re Brennan*, 243 N.Y.S. 705, 715 (N.Y. App. Div. 1930).

10

court deciding torts claim brought against entity). Moreover, as described in T.W.'s opening brief, New York courts accord BOLE substantial deference, confirming BOLE's degree of independence. *E.g.*, *Loeb v. New York State Bd. Of Law Exam'rs*, 534 N.Y.S.2d 559, 560 (N.Y. App. Div. 1988); *Sodha v. New York State Bd. Of Law Exam'rs*, 431 N.Y.S.2d 885, 886-87 (N.Y. Sup. Ct. 1980). BOLE did not address these cases in its brief.

Finally, BOLE does not dispute that it made the following sworn statements as part of its deposition in this case:

- BOLE is an "independent agency". JA225 at 28:20-23.

- "The board is an independent organization." JA225 at 29:7-8.

- UCS "does not provide direction; they do not provide supervision." JA225 at 29:11-12.

- BOLE does not need or "seek approval" from the Court of Appeals to take any actions. JA226 at 32:3-33:2.

- BOLE employees "don't take direction from the Unified Court System. They're not supervised by the Unified Court System. There's no daily interactivity with the Unified Court System." JA228 at 39:12-15.

This factual record, which cannot be manipulated, confirms that BOLE is not an arm of the state but rather an independent agency.[7]

## C. Title II Validly Abrogates Sovereign Immunity in this Educational Testing Case

BOLE does not contest that T.W. has stated a Title II claim for discrimination. BOLE failed to provide "reasonable modifications" as required by Title II to ensure that the bar examination was accessible in a timely manner. *E.g.*, 28 C.F.R. § 35.130(b)(7)(i). T.W. alleged that BOLE has a "fail-first" policy that requires individuals with disabilities to fail the bar examination before BOLE will consider granting in full the requested accommodations. JA29 at ¶ 71.

---

[7] BOLE confuses arm-of-the-state analysis with state action doctrine when it relies on *Hoover v. Ronwin*, 466 U.S. 558 (1984), a case that held that the Sherman Act does not apply to the administration of the bar exam that is the result of state action. Whether an entity is a state actor and whether an entity is an arm of the state are two completely distinct analytical questions. *E.g.*, *Edelman v. Jordan*, 415 U.S. 651, 667 n.12 (1974) (noting that a county is a state actor for Fourteenth Amendment purposes but not necessarily an arm of the state for Eleventh Amendment purposes); *Fabrikant v. French*, 691 F.3d 193, 206-07 (2d Cir. 2012) (private entities not arms of the state can be state actors for section 1983 purposes).

Moreover, whether a particular entity is an arm of the state is a fact-intensive and therefore state-specific inquiry. *Leitner*, 779 F.3d at 136 & n.2. The Arizona bar examination committee at issue in *Hoover* was subject to hands-on oversight by the Arizona Supreme Court, and had to seek approval from the court even with respect to which grading formula to use. The committee also did not have the power to select the topics to be tested on the bar examination. *Hoover*, 466 U.S. at 572-73. BOLE has testified in this case, by contrast, that it does not need or seek approval from the Court of Appeals to carry out its functions. JA226 at 32:3-33:2; *see also* JA107 (BOLE selects topics for examination).

BOLE is indifferent to the harms to individuals such as T.W. that stem from the delay in providing necessary accommodations. BOLE asserts that individuals (including those with disabilities) are always "free to try again" on the bar examination. BOLE Br. At 26. BOLE downplays the resulting harm to T.W., stating that T.W. passed when it eventually provided the requested accommodations. BOLE Br. At 27, 42. These assertions ignore T.W.'s allegations that BOLE's refusal to provide timely accommodations resulted in her losing her position as an associate at a top law firm and has prevented her from obtaining comparable employment elsewhere. JA28-29 at ¶¶ 61, 63, 73-74.

BOLE's argument would be even more obviously absurd if it claimed that it did not have to provide individuals with a wheelchair with physical access to the bar examination site until the third try, yet that is what BOLE argues with respect to T.W. who successfully overcame traumatic brain injury with testing accommodations that her law school provided on examinations. The discrimination that T.W. has faced is unfortunately not unique; as the Brief of *Amici* describes, barriers to education and educational testing have resulted in the underrepresentation of individuals with disabilities in the legal field, particularly individuals with cognitive disabilities. *See Amici* Br. At 6-13, 21-22. This case demonstrates the need for rigorous enforcement of Title II to ensure that public

educational testing entities, including BOLE, take seriously their obligation to provide accommodations in timely manner.

That BOLE does not dispute that T.W. has stated a Title II claim distinguishes the only other reported circuit court case involving a Title II claim brought against a bar examiner. *Block v. Tex. Bd. Of Law Exam'rs*, 952 F.3d 613, 617-19 (5th Cir. 2020) (holding that there was no Title II violation and therefore no need to reach the abrogation issue). BOLE does not dispute that Congress may validly abrogate sovereign immunity in the context of education and educational testing, even acknowledging that in such contexts. This case therefore calls for the straightforward application of well-established circuit court precedent to bar examinations designed to measure the sufficiency of legal education.

### 1. This Case Concerns the Accessibility of Education and Educational Testing

BOLE incorrectly suggests that its educational role is limited to "inform[ing] aspiring attorneys of what they should expect as they enter the legal profession." BOLE Br. at 29. BOLE does not contest that it was formed as an "educational board". JA74-76. Even after BOLE moved to the judicial branch, New York courts stated that BOLE's purpose is to conduct "pedagogical evaluations" and that it is charged with measuring "legal learning". *Krutell v. N.Y. State Bd. of Law Exam'rs*, 799 N.Y.S.2d 680, 681-82 (N.Y. App. Div. 2005); *In re Brennan*, 243

14

N.Y.S. at 715. BOLE also does not dispute that the decisions it makes about the content of the bar examination influences law school curricula and the education of law students. Whether or not students additionally review BOLE's written educational materials or enroll in BOLE's New York Law Course, their legal education has been indelibly shaped by BOLE's expectations of what knowledge they must demonstrate on the bar examination.

BOLE does not contest that Title II validly abrogates sovereign immunity in the context of education and educational testing. BOLE mistakenly suggests that such abrogation is limited to claims brought by students who might otherwise face a "grim future". BOLE Br. at 28-29. BOLE fails to acknowledge the case law holding that Title II validly abrogates sovereign immunity in the education context because it ensures that students are able to reap the benefits of their education unhindered by discrimination. *See, e.g.*, *Nat'l Ass'n of the Deaf v. State of Fla.*, 980 F.3d 763, 772 (11th Cir. 2020) (citing *Ass'n of Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005)). Generations of prospective lawyers attend law school to learn the knowledge needed to participate in our political system. When individuals with disabilities are denied necessary testing accommodations, their legal education is devalued because the bar examination then measures the extent of their disabilities rather than the extent of their knowledge.

BOLE failed to distinguish *Constantine v. Rectors & Visitors of George Mason Univ.*, a case in which the Fourth Circuit held that Title II validly abrogated sovereign immunity in the context of a law school student who did not receive necessary accommodations on an examination and therefore did not have a fair opportunity to demonstrate what she had learned. 411 F.3d 474, 478-79, 484-90 (4th Cir. 2005). Law school examinations and bar examinations both serve to ensure that prospective lawyers have mastered the legal knowledge expected of them as part of their legal education. Like the law student in *Constantine*, T.W. sought only necessary accommodations to ensure that she had an opportunity equal to that of individuals without disabilities to prove her mastery of legal education.[8]

Despite the remarkable parallels between this case and *Constantine*, both of which concerned the lack of testing accommodations on examinations, BOLE mistakenly insists that this is instead a case about professional licensing. BOLE, however, is not a licensing body and does not issue licenses. Further, BOLE's cited cases regarding professional licensing concerned the revocation of licenses. *See Renner v. Supreme Ct. of Fla.*, No. 19-14981, 2022 U.S. App. LEXIS 14211 (11th Cir. May 25, 2022) (revocation of probational law license due to mental

---

[8] Since T.W. did not seek to alter the content of the bar examination or its grading criteria, this is not a case about standards of qualifications, as BOLE suggests. T.W., rather, sought only the timely provision of necessary accommodations so that she had a fair opportunity as did her peers to demonstrate her legal education.

health issues); *Guttman v. Khalsa*, 669 F.3d 1101, 1107 (10th Cir. 2012) (revocation of license of physician deemed an "imminent danger to public safety").[9] Such cases do not deal with education or educational testing, and are not on point.

BOLE also erroneously asserts that "the U.S. Supreme Court has held that bar exams are a matter of professional licensure rather than education." BOLE Br. at 2. There is no such Supreme Court case. The case that BOLE relied upon, *Supreme Court of Va. v. Friedman*, 487 U.S. 59 (1988), predated the ADA and was a privileges and immunities case that held only that it was unconstitutional for Virginia to require nonresident attorneys licensed elsewhere to take the Virginia bar examination while permitting resident attorneys to waive into the state bar.

While passing the bar examination can be part of the process for obtaining a law license, there are numerous exceptions demonstrating that taking the bar examination is not always necessary to obtain a license. The Supreme Court case that BOLE relied on—*Friedman*—itself held that the bar examination is not always required for licensure. 487 U.S. 59. In another example of when the bar examination is not required, Wisconsin exempts graduates of Wisconsin law

---

[9] BOLE also misplaces reliance on *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019), which dealt with discrimination against Asian-owned businesses in the application of building codes, and *United States v. Farhane*, 634 F.3d 127, 137 (2d Cir. 2011), which noted that there is no constitutional right for a doctor to provide medical treatment to terrorists.

schools from the bar examination requirement.  Wis. S. Ct. R. 40.03.  In Wisconsin, law schools certify that their graduates successfully completed the legal education that the bar examination would have otherwise measured, further demonstrating the tight relationship between the bar examination and legal education.  *Id.*[10]

Like the law school in *Constantine* that failed to provide a student with necessary testing accommodations, when BOLE denied T.W. necessary accommodations, BOLE deprived T.W. of the opportunity to demonstrate on the bar examination what she had learned in law school.  This case therefore presents the opportunity for this Court to join every other circuit court addressing this issue to hold that in the context of education or educational testing, Title II validly abrogates sovereign immunity.  *See, e.g.*, *Constantine*, 411 F.3d at 484-90.

## 2.  There Is an Undisputed History of Pervasive Discrimination in Education and Educational Testing

This second prong of the abrogation inquiry focuses on whether there was an actual history of pervasive discrimination.  In *Tennessee v. Lane*, for instance, the

---

[10] BOLE also cites *United States v. Novak*, 903 F.2d 883, 888 (2d Cir. 1990), a case noting only that a Sixth Amendment right to effective counsel was implicated when a criminal defendant was represented by a purported attorney who had failed the bar examination.  The need to demonstrate competence in legal knowledge further highlights the importance of the bar examination in measuring the sufficiency of a prospective lawyer's legal education.

Supreme Court noted that Congress had enacted Title II "against a backdrop of pervasive unequal treatment in the administration of state services and programs." 541 U.S. 509, 524 (2004). The Supreme Court thus relied upon not only instances of discrimination referenced in the legislative record but also the history of discriminatory state statutory provisions, discriminatory state conduct, and judicial precedent. 541 U.S. at 523-29; *see also Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 729-30 (2003) (noting judicial precedent and the history of discriminatory state laws).

BOLE does not contest that there was a pervasive history of discrimination against individuals with disabilities in education and educational examinations. BOLE does not contest that there was a history of excluding individuals with disabilities from even taking examinations to prove their mastery of educational content. Nor does BOLE contest that there were "scores of horror stories" arising from the attempts of individuals with disabilities to take the bar examination. *Americans with Disabilities Act of 1989: Hearings on H.R. 2273 Before the H. Subcomm. on Civil & Constitutional Rights of the House Comm. on the Judiciary*, 101st Cong., 1st Sess. 162 n.3 (1989) (statement of Laura D. Cooper) (JA64).

BOLE contests the references to the 2008 legislative history but does not dispute that it was sued under the ADA as amended in 2008. BOLE also does not dispute that the ADA was amended in part to respond specifically to the ongoing

19

discrimination by testing entities that persisted despite the ADA.  Further,

Congress specifically referenced discrimination by BOLE as a reason to amend the

ADA.  ADA Amendments Act of 2008, H.R. Rep. 110-730(I), 110th Cong., 2d

Sess. 15 (2008) (discussing *Bartlett v. N.Y. State Bd. of Law Exam'rs)*; *see also*

154 Cong. Rec. H8286, 8291 (daily ed. Sept. 17, 2008) (same).  That Congress saw

such need for supplemental legislation to address persistent discrimination is

testament to the pervasiveness of the discrimination that the ADA was enacted and

then revised to address.  *See Lane*, 541 U.S. at 526, 531 (noting that the failure of

prior legislative responses to fully remedy the history of disability discrimination

"warranted added prophylactic measures in response"); *see also Hibbs*, 538 U.S. at

729-30, 737 (same in the context of gender discrimination).

Rather than acknowledge this history of discrimination of which it has been

a part, BOLE engages in a counting exercise, tallying up the number of citations to

the legislative record that T.W. pointed to in her brief.  This reductionist approach

improperly shifts the focus away from whether there was in fact such a history.

The ADA is a broad statute designed to remedy society-wide ills, and it is

impossible for Congress to provide countless examples of each precise type of

discrimination, as BOLE would have this Court require Congress do, such that

even pointing to "scores of horror stories" would not be enough to meet its burden

in enacting Section 5 legislation. *See Hibbs*, 538 U.S. at 730-31 (legislative record relying on summarized pattern of discrimination).

Further, the cases that BOLE relies on all noted that there was in fact no history of pervasive discrimination supporting the need for the legislation at issue in those cases. For instance, in *Bd. of Trustees of the Univ. of Alabama v. Garrett*, the Supreme Court noted a maximum of six questionable instances of discrimination by state employers as it observed the lack of history of pervasive discrimination in public-sector employment. 531 U.S. 356, 369-370 (2001); *see also Allen v. Cooper*, 140 S. Ct. 994, 1006 (2020) (focusing on the absence of history of discrimination). In such cases, there was simply not the history of discrimination—in the legislative record or elsewhere—that supported remedial legislation. *Contra Lane*, 541 U.S. 523-29 (drawing on a variety of historical evidence in describing the pervasive discrimination against individuals with disabilities in public services, programs, and activities).

BOLE also seeks to impose hypertechnical requirements on Congress, arguing for instance that it was inadequate for Congress to receive testimony describing "scores of horror stories" about the inaccessibility of the bar examination. BOLE Br. at 33-34. BOLE does not, however, dispute this testimony that Congress heard. Further, the Supreme Court has itself relied on testimony and written submissions provided to Congress in upholding abrogation.

21

*See, e.g.*, *Lane*, 541 U.S. at 526-527 (citing *Garrett*, 531 U.S. at 391-424) (referencing submissions made by individuals to a congressional task force); *Hibbs*, 538 U.S. at 731 (citing testimony).

BOLE also nitpicks at the discussion in the legislative record that is on point, claiming that a legislative report discussing the inaccessibility of public educational testing should be disregarded because Congress also discussed the inaccessibility of testing conducted by private entities. BOLE Br. at 33. This reference again to public entities when discussing private entities shows the extent to which such discrimination by public educational testing entities was on legislators' minds when they enacted the ADA. *See* H.R. Rep. 101-485(III) at 68 (1990), *reprinted in* A&P H.R. Rep. 101-485. Again, in no event does BOLE challenge the history of pervasive discrimination that Congress highlighted in requiring public (and private) educational testing entities to provide necessary accommodations to ensure a level playing field for individuals with disabilities.

In this case, Congress did its job in identifying an undisputed history of pervasive discrimination and making clear it was acting in response to that history. There is no dispute that there is a history and pattern of pervasive discrimination against individuals with disabilities in education and educational testing, and it is unquestioned that Congress sought to remedy such discrimination in enacting the ADA in 1990 and reinforcing the statute in 2008.

### 3. Title II Is a Congruent and Proportional Response to the History of Pervasive Discrimination in Education and Educational Testing

The ADA was passed in 1990 with broad bipartisan majorities in both legislative chambers. When the ADA was amended in 2008, it again enjoyed broad bipartisan support in both chambers. The considered judgment of legislators working in bipartisan fashion cannot so easily be substituted by BOLE proposing alternative statutory possibilities in an effort to evade responsibility for its discriminatory conduct.

BOLE claims, for instance, that the ADA could have been written to prohibit only constitutional violations. The Supreme Court, however, has stated that Congress may enact prophylactic legislation that proscribes more than just Fourteenth Amendment violations. *United States v. Georgia*, 546 U.S. 151, 159 (2006) (unanimous decision).

Further, the Supreme Court has made clear, in the context of Title II claims, that the availability of undue burden and fundamental alteration as defenses ensures that the statute's requirements are reasonably targeted to a legitimate end. *Lane*, 541 U.S. at 531-33. The availability of these defenses ensures that the application of Title II will not be burdensome on BOLE or other public educational testing entities.

23

Moreover, the testing accommodations that T.W. sought are routine testing accommodations that BOLE has previously been ordered to provide. *See, e.g.*, *Bartlett v. N.Y. State Bd. of Law Exam'rs*, No. 93 Civ. 4986 (SS), 2001 U.S. Dist. LEXIS 11926, at *165-66 (S.D.N.Y. Aug. 15, 2001) (Sotomayor, J.). In this case, BOLE's belated provision of necessary accommodations demonstrates that it would have been feasible for BOLE to provide those accommodations in timely manner when T.W. first took the bar examination. It is incongruent for BOLE to argue that it may not be required to take reasonable steps to place individuals with disabilities on a level playing field with individuals without disabilities. *See Lane* 541 U.S. at 531-33.[11]

---

[11] BOLE also argues against congruence and proportionality on the ground that regulating attorneys is purportedly a heightened state interest. BOLE Br. at 36. Whether this is so is beside the point, since BOLE does not license or regulate attorneys. Moreover, courts have held that Title II validly abrogates sovereign immunity even in the judicial and legislative contexts. *Lane*, 541 U.S. 509 (Title II validly abrogates sovereign immunity in judicial administration); *Nat'l Ass'n of the Deaf v. State of Florida*, 980 F.3d 763, 770-74 (11th Cir. 2020) (Title II validly abrogates sovereign immunity in the context of legislative proceedings). Further, as described *supra*, BOLE is required to make only reasonable modifications. 28 C.F.R. § 35.130(b)(7).

Moreover, the Supreme Court has not hesitated to strike down discriminatory applications of the bar examination requirement. *E.g.*, *Friedman*, 487 U.S. 59 (discussed *supra*); *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232 (1957) (employing rational basis review in holding unconstitutional the refusal to permit a former member of the Communist Party the opportunity to demonstrate his legal knowledge on the bar examination).

### D. *Ex parte Young* Provides for Declaratory and Injunctive Relief To Remedy Ongoing Discrimination

BOLE's brief does not respond meaningfully to T.W.'s opening brief with respect to her request for declaratory and injunctive relief to remedy the ongoing harms that she continues to suffer as a result of BOLE's refusal to disavow and expunge the bar examination failures obtained under discriminatory conditions. BOLE simply repeats what the District Court held, without acknowledging the multiple places in the Complaint that T.W. pointed to in her opening brief that allege ongoing harm as a result of BOLE's maintenance of bar examination records and refusal to expunge. T.W. Br. at 52-53. Nor does BOLE address the case law making clear that courts construe broadly well-plead allegations in the contexts of *Ex parte Young* and motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (motion to dismiss standard); *Vega v. Semple*, 963 F.3d 259, 282 n.120 (2d Cir. 2020) (deferential review of allegations in the *Ex parte Young* context).

BOLE asserts that it has no control over whether prospective employers ask T.W. about her bar examination record and how T.W. answers such questions. BOLE Br. at 40-41. BOLE overlooks that as long as BOLE refuses to disavow or expunge the bar examination failures obtained under discriminatory conditions, T.W. must answer that she has failed the bar examination. It is no answer that the

bar examination records are sealed or that T.W. can dissemble about her bar examination record, since T.W. must answer honestly when asked about what the bar examination records contain. N.Y. R. Prof. Conduct 8.4(c) (prohibiting attorneys from engaging in "dishonesty, fraud, deceit, or misrepresentation").

BOLE mistakenly claims that expungement is available as a remedy only when it can result in "re-examination" or "reinstatement". BOLE Br. at 41-42. This mischaracterizes the case law. For example, in *Flint v. Dennison*, the Ninth Circuit noted that *Ex parte Young* was available to expunge negative information in a college student's file that might jeopardize that student's future employment. 488 F.3d 816, 824 (9th Cir. 2007) (holding that graduation did not moot such declaratory relief). Since declaratory and injunctive relief requiring BOLE to disavow and expunge bar examination records is prospective relief that clears the path for T.W. to seek employment with law firms that would otherwise not consider her job application, *Ex parte Young* ensures the availability of such relief to remedy BOLE's ongoing discrimination.

## III.  CONCLUSION

For the reasons stated in T.W.'s opening brief and in this reply, this Court should reverse the District Court's decision and remand for further proceedings on the merits of T.W.'s Title II claim.

Respectfully submitted,

 /s/ Mary Vargas
Mary Vargas
Michael Steven Stein
STEIN & VARGAS, LLP
10 G Street NE, Suite 600
Washington, DC 20002
Tel: (240) 793-3185

 /s/ Jo Anne Simon
Jo Anne Simon
JO ANNE SIMON, P.C.
99 Park Avenue, Suite 1510
New York, NY 10016
Tel: (718) 852-3528

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, I hereby certify that according to the word count feature of Microsoft Word, the brief contains 6,446 words, excluding the parts of the brief exempted by Rule 32(f), and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1 as the font is Times New Roman, 14 point.

 /s/ Mary Vargas

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the Reply Brief of Plaintiff-Appellant by using the CM/ECF system on November 9, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ Mary Vargas

29